# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with jacob.berman111@gmail.com<br>that is stored at premises controlled by Google, Inc., an<br>email provider headquartered in Mountain View, CA. | )<br>)<br>)<br>)<br>)<br>)    Case No. 22 M 717 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Northern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(a)(1), 922(a)(6), and 924(c) | Dealing in firearms without a license; false statements to licensed firearms dealer; possession of firearms in furtherance of drug trafficking |

The application is based on these facts:

See Attached Affidavit of SA Bradley Kurtzweil

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

BRADLEY KURTZWEIL    Digitally signed by BRADLEY KURTZWEIL
Date: 2022.08.23 12:06:46 -05'00'

*Applicant's signature*

Bradley Kurtzweil, ATF Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____

*(specify reliable electronic means).*

Date: 8/23/2022

*Judge's signature*

City and state:  Green Bay, Wisconsin

Honorable James R. Sickel

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Bradley Kurtzweil, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1)   I make this affidavit in support of an application for a search warrant for information associated with a certain account, namely **jacob.berman111@gmail.com**, that is stored at premises controlled by Google, Inc., an email provider headquartered in Mountain View, CA. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google, Inc. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2)   I am a Special Agent of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the Milwaukee Field Office. I have been so employed since March 2020. My duties include investigating alleged violations of the federal firearms, explosives, and arson statutes.

3)   I have completed approximately 26 weeks of training (approximately 1000 hours) at the Federal Law Enforcement Training Center (Glynco, Georgia), as well as the ATF National Academy. That training included various legal courses related to Constitutional Law as well as search and seizure authority. I have also received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

4)     Before joining ATF, I was a sworn police officer in the State of Illinois from March 2011-March 2020, most recently with Bolingbrook PD from December 2012-March 2020. I completed 12 Weeks (approximately 480 hours) of basic training at the Illinois State Police Academy from April 2011-June 2011, and I served as an evidence technician for Bolingbrook PD from July 2017-March 2020.

5)     During my career as a police officer, I attended approximately 520 hours of additional training in areas including: evidence collection, interview/interrogation, arson and explosives, gang investigations; and drug investigations.

6)     The information below is based on my personal knowledge, training, and experience, and through information provided to me by other law enforcement officers during their official duties and whom I consider to be truthful and reliable.

7)     Because this affidavit is submitted for the limited purpose of demonstrating sufficient probable cause for the requested warrant, it does not set forth all of my knowledge about this matter.

8)     Based on the circumstances described below, there is probable cause to believe that Jacob S. BERMAN (dob xx/xx/1995) of Appleton, Wisconsin, has engaged in dealing in firearms without a federal firearms license, contrary to 18 U.S.C. § 922(a)(1), making false statements in the acquisition of firearms from a federally licensed dealer, contrary to 18 U.S.C. § 922(a)(6), and carrying, using, or possessing a firearm in connection with a crime of violence or drug trafficking offense, contrary to 18 U.S.C. § 924(c). There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

**JURISDICTION**

9)     This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

10)      It is unlawful for anyone who is not a federal firearm licensee ("FFL") to engage in the business of dealing in firearms, or to ship, transport, or receive a firearm in interstate or foreign commerce. See 18 U.S.C. § 921 et seq. In the Eastern District of Wisconsin, FFLs include commonly known retailers like Cabelas and Fleet Farm, and—of relevance here—Mister Money and Grunt Corp in Appleton.

11)      An FFL cannot lawfully transfer firearms to a non-FFL transferee/buyer (hereinafter "buyer") without requiring the buyer to complete ATF Form 4473, which must be kept in the FFL's records. See 18 U.S.C. § 921 et seq. In addition, FFLs must contact the National Instant Criminal Background Check System ("NICS") to determine if a transfer can lawfully proceed. NICS background checks are conducted by a designated state or federal law enforcement agency, and query databases for arrests, convictions, and other disqualifying conditions as described below and in 18 U.S.C. § 921 et seq. Of primary interest here, when a buyer wants to purchase a handgun from an FFL in Wisconsin, the FFL must initiate the NICS background check by contacting the Wisconsin Department of Justice's Handgun Hotline.

12)      To conduct a lawful NICS background check and firearm transfer from an FFL, the buyer must complete ATF Form 4473. Form 4473 requires the buyer to provide truthful, accurate, and material information regarding (but not limited to): (i) the buyer's name, residence, citizenship, and birthdate; (ii) whether the buyer is the actual buyer, rather than unlawfully acquiring the firearm for another person, commonly called "straw purchasing"; and (iii) whether

the buyer is statutorily prohibited from possessing firearms because they are or have been a fugitive, under indictment, a convicted felon, a convicted domestic-violence misdemeanant, an illegal alien, dishonorably discharged from the military, subject to a court order prohibiting firearm possession, adjudicated as mentally defective, committed to a mental institution, and/or an unlawful user of or addicted to any controlled substance.

13) Form 4473 provides definitions and examples to distinguish between an actual buyer versus unlawfully acquiring a firearm for someone else/straw purchasing. Unlawfully acquiring for others includes doing so for money or value, rather than as a bona fide gift. The tactic of straw purchasing is used not only when the buyer is prohibited by law from possessing firearms (and therefore cannot pass a background check), but also by non-prohibited buyers who want to avoid detection and suspicion because they intend to engage in unlawful activity with a firearm, like dealing firearms without a license, using firearms to commit crimes, or trading firearms for drugs.

14) Each time a buyer completes Form 4473 in a firearm transaction with an FFL, the form expressly notifies the buyer that their signature means: they are certifying that all information they provided is true and correct; that they understand all questions, notices, instructions, and definitions on the form; that they know any false answer can be prosecuted under federal and state law; and that they are providing all information under penalty of perjury.

15) Some gun buyers and sellers use on-line platforms like "Armslist," which serve as virtual marketplaces to arrange firearms transactions. However, the shipment and transfer of the firearm must be conducted in person through an FFL—like Mister Money and Grunt Corp.—in compliance with all laws in the buyer's state of residence.

16) In March and May 2022, FFLs Mister Money and Grunt Corp notified law

enforcement that BERMAN had engaged in numerous handgun transactions indicative of federal firearm violations. Law enforcement investigated the suspicious transactions and determined that BERMAN purchased at least 32 handguns from FFLs since April 2019, with other transactions denied or pending, summarized by year as follows:

- 2019 – 2 handguns purchased
- 2020 – 3 handguns purchased
- 2021 – 9 handguns purchased; 6 denied
- 2022 – 18 handguns purchased; 3 more pending pick up

17) Based on my training an experience, when someone—as Berman did—acquires more than one firearm of same make, model, and caliber, and engages in numerous, frequent, and rapid buying and selling of these types of firearms, such activity is indicative of dealing firearms. Also, Berman's activity is not consistent with occasional sales to enhance a private collection or as a hobby; the firearms at issue are not rare or unique; rather, they are fairly common and have characteristics allowing them to be sold at a profit to prohibited persons and/or those engaged in illicit activity.

18) Of the above handguns purchased and pending under BERMAN's name, the following are the same model and caliber pistols, namely: Glock 19 (2 purchased); Glock 19X (2 purchased); Glock 21 (2 purchased); Glock 22 (2 purchased; another 1 pending); Glock 23 (2 pending); Glock 43X (4 purchased); Glock 43 (5 purchased); Smith & Wesson MP9 M2.0 (2 purchased); and Sig Sauer P320 (2 purchased).

19) There is also probable cause that BERMAN's friend, Victor R. STATZ (dob xx/xx/2000) is aiding and abetting BERMAN's firearm violations. FFL Mister Money transferred 6 handguns to STATZ on March 24, 2021, all of which were arranged and purchased from online

retailers by BERMAN.

20)     Including the STATZ transfers, the total number of handgun purchases at issue increases to 38. The 6 handguns purchased by STATZ results in the following changes and additions to the list of multiple-purchase transactions for the same model/caliber handguns: Glock 21 (3 purchased); Glock 17 (3 purchased); Glock 27 (2 purchased); Glock 48 (2 purchased).

21)     STATZ's involvement with BERMAN regarding firearm transactions is likely linked, at least in part, to events following BERMAN's arrest by Grand Chute Police on February 6, 2021, for Operating While Intoxicated (1st), Failure to Keep Vehicle Under Control, and Possession of Marijuana. Berman was driving the VEHICLE at the time of his arrest. In that investigation, officers recovered approximately 16 grams of Marijuana from the center console of BERMAN's VEHICLE and noted a 40-caliber Glock pistol between the driver's seat and center console. BERMAN subsequently tried to buy multiple handguns from FFLs, but those purchases were denied by the Wisconsin handgun hotline on March 24, 2021, and February 17, 2022.

22)     Records obtained during the investigation also indicate the following:

- BERMAN bought a Glock 17 Gen 5 9mm handgun from Recoil Gunworks on March 9, 2021, to be transferred by Mister Money in Appleton, WI.

- BERMAN bought a Glock 21 Gen 4 .45-cal. handgun and a Glock 17 Gen 3 9mm handgun from Georgia Gun Store on March 8 and March 15, 2021, to be transferred by Mister Money.

- BERMAN bought two Glock 48 9mm handguns and a Glock 27 .40-cal. handgun from Kittery Trading Post on March 17 and March 18, 2021, to be transferred by Mister Money.

23)     Following BERMAN'S NICS denial on March 24, 2021, FFL Mister Money

transferred 6 Glocks (as indicated and listed above) to STATZ that BERMAN had bought through online retailers. BERMAN was present for the transfer. Mister Money required STATZ to sign an agreement that he would not turn over the firearms to BERMAN. Since then, two of the Glocks have been recovered in crimes. The Glock 21 Gen 4 was recovered by the San Francisco Police Department with a 121-day time to crime. The Glock 17 Gen 3's serialized frame was recovered by the Milwaukee Police Department with a 368-day time to crime. As defined in 18 U.S.C. § 921(a)(3), "firearm" includes the "frame and receiver of any such weapon."

24)     According to Armslist's records, BERMAN made over 150 postings since April 2020 in which he advertised firearms and ammunition for sale or trade, including:

- On August 24, 2020, FFL Mister Money transferred (2) Glock 43X handguns to BERMAN for $479.14 each. On August 28, 2020, BERMAN listed a "Glock 43X BNIB (Brand new in box)" on Armslist for $600. BERMAN's online post said that the handgun had never been fired.

- On January 26, 2021, FFL Mister Money transferred a Kel-Tec KSG 12 Gauge shotgun to BERMAN for $638.00. On January 27, 2021, BERMAN listed a Kel-Tec, KSG, shotgun on Armslist for $1,150. In the post BERMAN stated he had fired it once.

- On March 24, 2021, as mentioned above, FFL Mister Money transferred 6 Glocks to STATZ, including a Glock 17 Gen 3. On April 7, 2021, BERMAN listed the lower receiver for a Glock 17 Gen 3 on Armslist for $250. On March 27, 2022, the same lower receiver for the Glock 17 Gen 3 that Mister Money previously transferred to STATZ was recovered by the Milwaukee Police Department.

- On April 16, 2022, BERMAN purchased a Glock 17 9mm handgun from FFL

Scheels in Appleton, WI for $431.99. On April 17, 2022, BERMAN listed a Glock 17 handgun for sale on Armslist for $600.

- On April 21, 2022, BERMAN purchased a Glock 26 9mm handgun from FFL Scheels in Appleton, WI for $558.58. On April 26, 2022, BERMAN listed a Glock 26 handgun for sale on Armslist for $650.00.

- On May 2, 2022, BERMAN had a Sig Sauer P320 9mm handgun transferred to him by FFL Grunt Corp in Appleton, WI. BERMAN paid $421.65. On May 6, 2022, BERMAN purchased another Sig Sauer P320 9mm handgun from FFL Scheels in Appleton, WI for $426.99. On May 7 and May 9, 2022, BERMAN listed a Sig Sauer P320 handgun on Armslist for $600.

- On May 6, 2022, BERMAN purchased a Glock 43X 9mm handgun from FFL Scheels in Appleton, WI for $426.99. On May 9, 2022, BERMAN listed a Glock 43X handgun on Armslist for $650.

- On May 6, 2022, BERMAN had a Springfield Armory Saint Victor 5.56mm handgun transferred to him by FFL Grunt Corp in Appleton WI. BERMAN paid $633.75. On May 10, 2022, BERMAN listed a Springfield Armory Saint Victor 5.56mm handgun on Armslist for $1,200.

- On May 6, 2022, BERMAN purchased a Smith & Wesson M&P9 M2.0 9mm handgun from FFL Scheels in Appleton, WI for $358.97. On May 14, 2022, BERMAN listed a Smith & Wesson M&P9 M2.0 9mm handgun on Armslist for $550.

- On June 1, 2022, BERMAN purchased a Glock 19x 9mm handgun from FFL Fleet Farm in Appleton, WI for $632.44. On June 2, 2022, BERMAN listed a "new"

Glock 19x 9mm handgun on Armslist for $700.

- On June 17, 2022, FFL Grunt Corp. transferred to BERMAN a Sig Sauer P229 40-cal. Handgun. BERMAN paid $528.51. On July 20, 2022, BERMAN listed a Sig Sauer P229 40-cal. handgun on Armslist for $600.

25) BERMAN's Armslist account has been active since April 24, 2019. Many of BERMAN's posts indicate he can be contacted at phone number 301-525-4304. Records obtained from T-Mobile indicate that this number has been registered to BERMAN since September 20, 2020. BERMAN'S Armslist account is linked to email account **jacob.berman111@gmail.com**.

26) In messages obtained from Armslist, BERMAN not only obtains firearms from FFLs but also on the secondary market. There are approximately 77 such messages from February 11, 2021, through August 30, 2021, in which BERMAN attempted to obtain or trade firearms through the secondary market. During this period, BERMAN was unable to lawfully possess or obtain firearms in the State of Wisconsin due to the State's determination that he was a prohibited person.

27) Given the above information it is reasonable to believe BERMAN is engaging in the firearm business without a license, using multiple platforms, including websites, text messages, phone calls and emails.

28) On May 27, 2022, the Appleton Police Department received a complaint from the Crescent Loft apartments at 315 W. Franklin Street where BERMAN resides in Apartment 168. The complainant, an employee of the complex, reported possible drug activity and "a lot of short-term visitors in apartment 168." The visitors were reportedly let into the secure building by BERMAN, where they step into an adjacent hallway, into an area not visible on surveillance cameras, and leave approximately 30 seconds later. On two occasions the "visitors" were seen

putting something into their pocket or removing something from inside the sleeve of a sweatshirt.

29)     Officers met with apartment-complex employees, who provided access to the surveillance cameras that capture the common lobby and exterior areas. In reviewing those videos, officers saw several short-term visitors who were let into the building by BERMAN and walked out of camera view with BERMAN. One visitor met with BERMAN and placed what appeared to be a small baggy in their pocket before leaving.

30)     Based on my training and experience, the above behavior can be indicative of narcotics trafficking.

31)     On August 18, 2022, ATF Agents as well as officers from the Appleton Police Department, the Lake Winnebago Metropolitan Enforcement Group (LWAM), and Outagamie County Sheriff's Office executed a Federal Search Warrant issued in the Eastern District of Wisconsin (22-M-712) on BERMAN's residence, 315 W Franklin St, Apt 168, Appleton.

32)     The search warrant resulted in the seizure of 28 firearms, various ammunition, body armor, indicia/records of firearms purchases/transactions, 1,735.69 grams of marijuana/THC, 23.8 grams of Cocaine, 1.71 grams of Buprenorphine CSA 3 Narcotic, and 23 pills of Alprazolam CSA 4 Benzodiazepine. The firearms, drugs, and paraphernalia were found in close proximity to each other, in both the common living area and closet. The marijuana was packaged in large mason jars. The cocaine was divided into plastic sandwich baggies. Also present were multiple scales and items indicative of packaging narcotics. In my training and experience, the totality of drug-related evidence in Berman's apartment was indicative of distribution rather than personal use.

33)     Included in the records seized were packing slips from Polymer80 Inc, indicating 4 "Full Pistol Frame Parts Kits" and (4) "Slides, Compact, G19, Black Nitride" were shipped to BERMAN, on November 30, 2021. Based on my training and experience, I know these kits are

often used to build "Privately made firearms," or "Ghost Guns."

34) Also included in the records seized were 12 handwritten receipts spanning from June 2019 to July 2022 indicating BERMAN to have sold 17 firearms in private sales.

35) Of the 28 firearms recovered from BERMAN's apartment, only 2 were known to ATF as being purchased by BERMAN from an FFL based on FFL records (detailed above). At this time, it is unknown to law enforcement where BERMAN obtained the other 26 firearms, whether they were purchased via private sale or from an FFL.

36) Of the 17 firearms BERMAN wrote receipts for private sales for, only 6 were known to have been purchased by BERMAN from FFLs. At this time, it is unknown to law enforcement where BERMAN obtained the other 11 firearms, whether they were purchased via private sale or from an FFL.

37) Given the above information, there is probable cause to believe that BERMAN has been involved in the purchasing and selling of at least 75 firearms between approximately January 2019 and the present.

## BACKGROUND CONCERNING EMAIL

38) In my training and experience, I have learned that Google, Inc. provides a variety of on-line services, including electronic mail ("email") access, to the public. Google, Inc. allows subscribers to obtain email accounts at the domain name Gmail.com, like the email account listed in Attachment A. Subscribers obtain an account by registering with Google, Inc. During the registration process, Google, Inc. asks subscribers to provide basic personal information. Therefore, the computers of Google, Inc. are likely to contain stored electronic communications (including retrieved and unretrieved email for Google, Inc. subscribers) and information concerning subscribers and their use of Google, Inc. services, such as account access information,

email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

39)     A Google, Inc. subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google, Inc. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

40)     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

41)     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the

account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

42)     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

43)     This application seeks a warrant to search all responsive records and information under the control of Google, Inc., a provider subject to the jurisdiction of this court, regardless of where Google, Inc. has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Google, Inc.'s possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

44)     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct

under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

45)     There is probable cause that in the Google account including but not limited to the email account Jacob.berman111@gmail.com listed in previous paragraphs there is evidence of

violations of 18 U.S.C. § 922(a)(1), 18 U.S.C. § 922(a)(6), and 18 U.S.C. § 924(c).

46)     I know that persons who purchase and sell firearms commonly maintain photographs, documents, communication regarding the purchase and/or sale of those firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons, as well as records or receipts pertaining to firearms and ammunition on remotely stored accounts such as Google and within email accounts maintained by Google such as "gmail."

47)     Based upon my training and experience, I know that the execution of a search warrant related to remotely stored accounts such as Google and within email accounts maintained by Google such as "gmail" usually results in items of personal documents such as bills, bank statements, photographs, videos, and other items or documents which establish the identities of persons in control of the media.

48)     Based upon my training and experience, I know that individuals purchasing and selling firearms routinely keep emails, regarding the purchase and/or sale.

49)     I know that it is common for firearms purchasers to maintain electronic records, receipts, notes, ledgers, receipts relating to the transportation, ordering and purchase of firearms and that such records are typically kept where the purchaser would have ready access to them including Google accounts.

50)     I know that firearm possessors and traffickers often take or cause to be taken photographs and other visual depictions of themselves, their associates, property, and firearms, and typically keep and maintain these photographs in their residences and other locations where they exercise dominion and control such as telephones, tablets, computers, other media storage devices and remote storage locations.

## TECHNICAL TERMS

51)     Based on my training and experience, I use the following technical terms to convey the following meanings:

52)     IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

53)     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

BRADLEY
KURTZWEIL

Digitally signed by BRADLEY
KURTZWEIL
Date: 2022.08.23 12:06:03 -05'00'

**Bradley Kurtzweil**
**ATF Special Agent**

Sworn and attested to me by reliable electronic means pursuant to the requirement of Fed. R. Crim. P. 4.1 (Telephone) on this 23 day of August, 2022.

HONORABLE JAMES R. SICKEL
United States Magistrate Judge
Application No.

## ATTACHMENT A
### Property to Be Searched

This warrant applies to any Google, Inc. account linked to the email address Jacob.Berman111@gmail.com that is stored at premises owned, maintained, or operated by Google, Inc., a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043 for the purpose of information described in Attachment B.

**ATTACHMENT B**
**Particular Things to be Seized**

1.      Information to be disclosed by Google, Inc. ("Provider")

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on August 4, 2022, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A from January 1, 2019 to the present:

All records contained within any Google, Inc. account linked to the email address **jacob.berman111@gmail.com** described in Attachment A that relate to violations of 18 U.S.C. §§ 922(a)(1), 922(a)(6), and 924(c) including:

    a.   The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

    b.   All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c. The types of service utilized;

d. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and

f. For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

g. lists of BERMAN's contacts and any identifying information;

h. Photographs, videos, or other media storage connected to firearms;

i. types, amounts, and prices of firearms purchased/sold;

j. any information related to sources or purchasers of firearms (including names, addresses, phone numbers, or any other identifying information);

k. any information regarding BERMAN's schedule or travel from January 2019 to the present;

l. all bank records, checks, credit card bills, account information, and other financial records related to firearms commerce.

m. The Provider is hereby ordered to disclose the above information to the government within 14 DAYS of the issuance of this warrant.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Google, Inc., and my official title is _____. I am a custodian of records for Google, Inc. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Google, Inc., and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Google, Inc.; and

c.      such records were made by Google, Inc. as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____
Date                                             Signature